## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **WORLD WRESTLING ENTERTAINMENT, INC.,** | : | **CASE NO. 3:15-CV-01204-VLB** |
| | : | |
| **Plaintiff,** | : | |
| **VS.** | : | |
| | : | |
| **CTH CONTENT COMPANY LIMITED and CTH PUBLIC COMPANY LIMITED,** | : | |
| | : | |
| **Defendants.** | : | **AUGUST 25, 2015** |

### FIRST AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a)(1), Plaintiff World Wrestling Entertainment, Inc. ("WWE") hereby files this First Amended Complaint as a matter of right against Defendants CTH Content Company Limited ("CTHC") and CTH Public Company Limited ("CTH") (collectively, "Defendants")  and in support thereof states as follows.

### THE PARTIES

1.     Plaintiff WWE is a Delaware corporation having its principal place of business at 1241 East Main Street, Stamford, Connecticut, 06902.  WWE is an integrated media and entertainment company principally engaged in the development, promotion, and marketing of television programming, pay-per-view programming, and live arena events featuring its unique wrestling-based sports entertainment programming, and the licensing and sale of branded consumer products featuring its famous brands.

2.     Defendant CTHC is a Thai company having its principal place of business at 96/1 Chaloem Phrakiat Ror 9 Road, Nong Bon, Prawet, Bangkok

10250, Thailand.  CTHC is a subsidiary of CTH and is the owner of certain broadcast television channels in Thailand.

3.      Defendant CTH is a Thai company with offices at 96/1 Chaloem Phrakiat Ror 9 Road, Nong Bon, Prawet, Bangkok 10250, Thailand.  CTH, previously known as Cable Thai Holding Public Company Limited, is the parent company of CTHC and a leading operator and provider of cable television and Internet broadband services in Thailand.

<u>JURISDICTION AND VENUE</u>

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5.      This Court has personal jurisdiction over Defendants because CTHC consented to jurisdiction in this Court pursuant to Section L(13) of the Standard Terms and Conditions of the International Television Rights License Agreement dated as of November 1, 2013 ("License Agreement").  CTH is bound by the License Agreement because CTHC acted as the agent or alter ego of CTH in connection with this transaction as alleged herein.

6.      Venue is appropriate in this District under 28 U.S.C. § 1391(d) because an alien may be sued in any District.  CTHC also has consented to venue in this District pursuant to Section L(13) of the Standard Terms and Conditions of the License Agreement.  CTH is bound by the License Agreement because CTHC

acted as the agent or alter ego of CTH in connection with this transaction as alleged herein.

FACTUAL BACKGROUND

**The Deal Memo**

7.       WWE and CTHC entered into a Deal Memo dated November 1, 2013, pursuant to which WWE agreed to license certain television programs to CTHC for broadcasting in Thailand in exchange for payment of license fees in accordance with the terms of the Deal Memo.  A true and accurate copy of the Deal Memo is attached as Exhibit A to the Complaint.

8.       The Deal Memo provided that the parties would use reasonable efforts to conclude a long form agreement embodying the terms of Deal Memo and other customary standard terms and conditions.

**The License Agreement**

9.       WWE and CTHC entered into the License Agreement dated as of November 1, 2013, pursuant to which WWE granted CTHC the exclusive but limited right and license to broadcast certain television programs in Thailand via Pay Television on the broadcast channel owned by CTHC known as CTH Sports Channel and via any other means of retransmission on authenticated platforms owned or controlled by CTHC, subject to the terms, restrictions and limitations set forth in the License Agreement.  The period of the License Agreement commenced on January 1, 2014 and is scheduled to terminate on December 31, 2018.  A true and accurate copy of the License Agreement is attached as Exhibit B to the Complaint.

-3-

10.     Section 4 of the License Agreement provides that CTHC was required to pay to WWE a particular license fee for each of the specified television programs to which CTHC was granted rights under the License Agreement.  Section 4 of the License Agreement sets forth the amount of the license fees that CTHC is required to pay each year during the term of the License Agreement and a schedule by which such payments are to be made.  Section 4 also required CTHC to provide a Bank Guarantee in a specified amount each year (generally half of the total amount of license fees due in that year) during the term of the License Agreement and to provide WWE with copies of all documents evidencing such Bank Guarantee.

11.     Section 8 of the License Agreement provides in relevant part that "[t]his Agreement is subject to all of the provisions of the Standard Terms and Conditions that are attached to and made a part of this Agreement."

12.     Section A(1) of Standard Terms and Conditions to the License Agreement provides in relevant part that "[u]nless otherwise agreed to in writing Licensee shall pay WWE the total license fee due, whether or not the Programs are telecast, without any deduction or offset of any kind except as specified in the Agreement, and notwithstanding any claim Licensee may have or claim to have, and whether or not the Licensee becomes aware of such claim during or after the expiration of termination of the Agreement."

13.     Section A(2) of the Standard Terms and Conditions to the License Agreement provides in relevant part that CTHC "shall pay WWE interest on any late payment at the lesser of (i) an annual rate of 2% over the prevailing prime

-4-

interest rate in effect at JP Morgan Chase, New York, New York, on the date on which the outstanding amount of such late payment should have been received by WWE or (ii) the highest amount of interest allowed by applicable law."

**Failure to Make Payments Due under the License Agreement**

14.     In accordance with the payment schedule in the License Agreement, WWE sent invoices to Defendants for payments due and owing under the License Agreement, including Invoice No. 95755 dated March 1, 2014 in the amount of $560,000.00, Invoice No. 97598 dated June 1, 2014 in the amount of $560,000.00, Invoice No. 99127 dated August 1, 2014 in the amount of $560,000.00, Invoice No. 100786 dated October 1, 2014 in the amount of $560,000.00, Invoice No. 102403 dated January 1, 2015 in the amount of $728,000.00, Invoice No. 102901 dated March 1, 2015 in the amount of $728,000.00, and Invoice No. 104680 dated June 1, 2015 in the amount of $728,000.00.  A true and accurate copy of these invoices is attached as Exhibit C to the Complaint.

15.     Defendants never made any payments on the invoices sent by WWE that are attached as Exhibit C to the Complaint.

16.     Defendants also failed to pay $728,000.00 in license fees that were due to WWE on August 1, 2015 pursuant to the payment schedule set forth in the License Agreement.

17.     CTHC also never provided WWE with the Bank Guarantee that was required by the License Agreement.

18.     WWE made several attempts in good faith to contact CTHC regarding its repeated failures to make the payments required by the License Agreement.

19.     By letter dated October 23, 2014, WWE provided CTHC with a formal notice that CTHC was in breach of the License Agreement for non-payment of outstanding license fees then totaling $2,240,000.00.

20.     By letters dated May 22, 2015, WWE demanded payment from CTH and CTHC for the outstanding license fees due under the License Agreement then totaling $3,969,000.00, plus the interest accrued thereon at the rate prescribed in Section A(2) of the Standard Terms and Conditions calculated from the date that each license fee was due.

21.     As of August 1, 2015, CTHC's outstanding balance for license fees owed under the License Agreement totaled $5,152,000.00, exclusive of interest.

Termination of the License Agreement

22.     Section K(1) of the Standard Terms and Conditions of the License Agreement provides:  "If Licensee breaches any of the material terms or provisions of this Agreement including, without limitation, any non-payment hereunder, and the Licensee fails to cure the breach within ten (10) days after receiving written notice from WWE specifying the particulars of the breach, WWE shall have the right to terminate this Agreement immediately by giving written notice to Licensee."

23.     On August 14, 2015, WWE sent a formal notice terminating the License Agreement based on CTHC's material breaches of the License Agreement and failure to cure those breaches, including without limitation CTHC's non-payment of license fees under the License Agreement (the "Notice of

Termination"). A true and accurate copy of the Notice of Termination is attached as Exhibit D to the Complaint.

24. The Notice of Termination constituted a valid and effective exercise of WWE's right to terminate the License Agreement.

25. Section K(2) of the Standard Terms and Conditions of the License Agreement (the "Acceleration Clause") provides in relevant part that "upon the termination of this Agreement, all amounts due WWE by Licensee for Programs (i.e. the then remaining balance of the license fees due WWE as of the date of termination) shall become immediately due and payable to WWE."

26. Pursuant to the Acceleration Clause, all license fees due to WWE under the License Agreement became immediately due and payable to WWE by CTHC upon termination of the License Agreement. The remaining balance of unpaid license fees under the License Agreement totals $22,942,500.00, which includes the $5,152,000.00 in license fees that were already past due and owed by CTHC. This sum does not include any fees or interest to which WWE is entitled pursuant to Section A(2) of the Standard Terms and Conditions.

27. To date, Defendants have not paid WWE any of the outstanding amounts due and owing under the License Agreement.

28. Section K(3) of the Standard Terms and Conditions of the License Agreement provides that, upon termination of the License Agreement, "Licensee shall discontinue immediately and permanently all broadcast and other use of the Programs and the Advertising Materials; shall discontinue immediately and permanently the use of the Intellectual Property; shall terminate immediately all

-7-

agreements with third parties that relate to the Programs; and shall return immediately to WWE or destroy (pursuant to Section E(6) above) all materials relevant to the Programs including without limitation Tapes for the Programs and Advertising Materials ('Materials').  Notwithstanding anything to the contrary herein, Licensee shall pay for all charges associated with the destruction of the Materials or return of the Materials to WWE."

29.    Upon information and belief, following termination of the License Agreement, Defendants failed to discontinue immediately and permanently all broadcast or other use of the Programs and Advertising Materials and the use of the Intellectual Property, failed to terminate all agreements with third parties that relate to the Programs, failed to return to WWE or destroy all Materials relevant to the programs, and failed to pay for all charges associated with the destruction of the Materials and return of the Materials to WWE.

30.    Section K(4) of the Standard Terms and Conditions of the License Agreement provides:  "Licensee agrees that irreparable injury for which an adequate remedy at law does not exist, will occur to WWE if any of the provisions of this Agreement are not performed by Licensee in accordance with their specific terms.  Accordingly, Licensee agrees that WWE will be entitled to an injunction or injunctions to prevent any breach or threatened breach of this Agreement and to enforce specifically the terms and provisions hereof in those courts having jurisdiction pursuant to Sections L(12) and L(13) below; this being in addition to any other remedy to which WWE may be entitled at law or in equity."

## COUNT ONE
## Breach of Contract Against CTHC

31.    WWE re-alleges each of the foregoing paragraphs as if set forth fully herein.

32.    The License Agreement constitutes a valid and enforceable contract between WWE and CTHC.

33.    WWE has complied with all of its obligations under the License Agreement.

34.    The License Agreement required CTHC to provide WWE with a Bank Guarantee in a specified amount each year during the term of the License Agreement and to provide WWE with copies of all documents evidencing such Bank Guarantee.

35.    CTHC did not provide WWE with the required Bank Guarantee or copies of documents evidencing a Bank Guarantee.

36.    CTHC's failure to provide WWE with the required Bank Guarantee or copies of documents evidencing the Bank Guarantee constitutes a breach of the License Agreement.

37.    The License Agreement required CTHC to pay to WWE license fees according to a specific payment schedule and to pay the remaining balance of all license fees due to WWE under the License Agreement upon termination of the License Agreement.

38.    CTHC did not pay to WWE the license fees that are due and payable under the License Agreement.

39.     CTHC's failure to pay to WWE the license fees that are due and payable under the License Agreement constitutes a breach of the License Agreement.

40.     The License Agreement also required CTHC to discontinue immediately and permanently all broadcast or other use of the Programs and Advertising Materials and use of the Intellectual Property, terminate all agreements with third parties that relate to the Programs, return to WWE or destroy all Materials relevant to the programs, and pay for all charges associated with the destruction of the Materials and return of the Materials to WWE immediately following termination of the License Agreement.

41.     CTHC's failure to take required actions following termination of the License Agreement constitutes a breach of the License Agreement.

42.     WWE has been damaged by CTHC's breach of the License Agreement.

43.     WWE is entitled to payment of all amounts due and payable under the License Agreement, including interest on all outstanding amounts in accordance with the Standard Terms and Conditions of the License Agreement (at least $22,942,500.00 plus interest).

## COUNT TWO
### Account Stated Against CTH and CTHC

44.     WWE re-alleges each of the foregoing paragraphs as if set forth fully herein.

45.     WWE sent invoices to Defendants reflecting the amounts owed to WWE for license fees under the License Agreement.

46.     Defendants did not timely dispute the amounts owed to WWE on the invoices.

47.     Defendants never made any payments on the invoices sent by WWE that are attached as Exhibit C to the Complaint.

48.     WWE has been damaged by the failure of Defendants to make payments on the invoices that are attached as Exhibit C to the Complaint.

49.     WWE is entitled to payment of all amounts reflected on the invoices that are attached as Exhibit C to the Complaint.

## COUNT THREE
### Unjust Enrichment Against CTH

50.     WWE re-alleges each of the foregoing paragraphs as if set forth fully herein.

51.     CTH has been unjustly enriched by its retention of the license and television programs provided by WWE without paying for them.

52.     CTH's failure to pay WWE for the license and television programs provided by WWE was to WWE's detriment.

53.     WWE has been damaged by CTH's failure to pay for the license and television programs provided by WWE.

54.     WWE is entitled to full compensation for the benefits it has conferred upon CTH.

## COUNT FOUR
### Breach of Contract Against CTH Based on Piercing the Corporate Veil

55.     WWE re-alleges each of the foregoing paragraphs as if set forth fully herein.

56.     CTH is the parent company of CTHC and owns 99,997 out of the 100,000 shares of CTHC according to its shareholder list.

57.     Defendants have overlapping management and personnel. Defendants share the same office space, address, website, and telephone number.  Defendants share the same core business operations.  Defendants do not deal with each other as arms-length companies.

58.     A representative of Defendants has even informed WWE that the companies are part of the same group and operate together.

59.     On information and belief, there was such a unity of interest and ownership between CTH and CTHC that the independence of CTHC had in effect ceased or had never begun, and an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting CTHC to escape liability arising out of an operation conducted by CTHC for the benefit of CTH.

60.     On information and belief, CTH completely dominated and controlled the finances, policy, and business practices of CTHC with respect to the License Agreement with WWE such that CTHC had no separate mind, will, or existence of its own.

61.     CTH's control over CTHC was used to commit a fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of WWE's legal rights by failing to make payments of the amounts owed under the License Agreement, thereby proximately causing damages to WWE.

62.     As a result, CTH is jointly and severally liable for the full amount owed to WWE by CTHC under the License Agreement.

## COUNT FIVE
## Breach of Contract Against CTH Based on Agency

63.     WWE re-alleges each of the foregoing paragraphs as set forth fully herein.

64.     CTH intended for CTHC to act as its agent and on its behalf in entering into the License Agreement and in its dealings with WWE.

65.     CTHC agreed to act as CTH's agent in entering into the License Agreement and in its dealings with WWE.

66.     CTH exercised control over CTHC in connection with the License Agreement and in its dealings with WWE.

67.     As a result, CTH is liable for the full amount owed to WWE by CTHC under the License Agreement.

## COUNT SIX
## Violation of the Connecticut Unfair Trade Practices Act Against Defendants

68.     WWE re-alleges each of the foregoing paragraphs as if set forth herein.

69.     Defendants' multiple breaches of contract and their refusal to perform under the License Agreement while retaining the benefits of the License Agreement constitute substantial aggravating circumstances.

70.     Defendants' acts constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

-13-

71.     Defendants' conduct offends public policy as established by common law, statute, or other established concept of unfairness.

72.     Defendants' conduct is immoral, unethical, oppressive, and unscrupulous.

73.     Defendants' conduct has caused substantial injury to WWE.

74.     Defendants' conduct has caused WWE to suffer an ascertainable loss, including millions of dollars in damages.

75.     Defendants exhibited a reckless indifference to the rights of WWE or an intentional and wanton violation of those rights.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, WWE hereby demands the following relief against Defendants:

(a)     A declaratory judgment that Defendants have breached the License Agreement and that the License Agreement has been validly and effectively terminated;

(b)     An injunction requiring Defendants to discontinue immediately and permanently all broadcast and other use of the Programs and the Advertising Materials, discontinue immediately and permanently the use of the Intellectual Property, terminate immediately all agreements with third parties that relate to the Programs, return immediately to WWE or destroy all materials relevant to the Programs including without limitation Tapes for the Programs and Advertising Materials, and to pay for all charges associated with the destruction of the Materials or return of the Materials to WWE;

-14-

(c)     Monetary damages, including damages for unpaid license fees due under the License Agreement in the amount of $22,942,500.00, exclusive of interest;

(d)     Interest on the total amount due as provided for in the License Agreement;

(e)     Prejudgment interest and post-judgment interest;

(f)     Punitive damages;

(g)     Attorney's fees and costs; and

(h)     Such other relief as this Court may deem just and proper.

A JURY TRIAL IS HEREBY DEMANDED.

PLAINTIFF WORLD WRESTLING
ENTERTAINMENT, INC.

By: */s/ Jeffrey P. Mueller*
    Jonathan B. Tropp (ct11295)
    Jeffrey P. Mueller (ct27870)
    Day Pitney LLP
    242 Trumbull Street
    Hartford, CT 06103
    Phone: (860) 275-0100
    Fax: (860) 275-0343
    Email: jbtropp@daypitney.com
    Email: jmueller@daypitney.com
    Its Attorneys