UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **WORLD WRESTLING ENTERTAINMENT, INC.,** | : | CASE NO. 3:15-CV-01204-VLB |
| | : | |
| Plaintiff, | : | |
| VS. | : | |
| | : | |
| **CTH CONTENT COMPANY LIMITED** and **CTH PUBLIC COMPANY LIMITED,** | : | |
| | : | |
| Defendants. | : | OCTOBER 29, 2015 |

## MOTION FOR ENTRY OF DEFAULT JUDGMENT

TO:   THE CLERK OF THE COURT

Pursuant to Federal Rule of Civil Procedure 55(b)(1), Plaintiff World Wrestling Entertainment, Inc. ("WWE") hereby moves for the entry of judgment following default against Defendants CTH Content Company Limited ("CTHC") and CTH Public Company Limited ("CTH") (collectively, the "Defendants"), jointly and severally, in the liquidated amount of $23,387,360.76.  In support of this motion, WWE states as follows.

I.      **BACKGROUND AND PROCEDURAL HISTORY**

1.      The First Amended Complaint was filed in this matter on August 25, 2015.  (*See* Doc. No. 11.)

2.      The Summons and First Amended Complaint were served on the Defendants in September 2015 in accordance with Federal Rule of Civil Procedure 4(f)(2)(c)(ii) and the Court's Instructions for Service of Process on a Foreign Defendants.  (*See*  Docs. No. 12-13.)

3. The Defendants did not file an answer or otherwise respond to the First Amended Complaint or serve a copy of any answer or other response within 21 days of the date of service as required by the Federal Rules of Civil Procedure. As of this date, the Defendants still have not filed an answer or otherwise responded to the First Amended Complaint.

4. On October 22, 2015, WWE file a motion for entry of default by the Clerk of the Court. (*See* Doc. No. 14.)

5. On October 23, 2015, the Court granted WWE's motion for entry of default against the Defendants. (*See* Doc. No. 15.)

II. <u>FACTS ESTABLISHED BY THE DEFAULT</u>

6. The default establishes the truth of the allegations of the First Amended Complaint as to the liability of the Defendants. *See Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973) ("[A] default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability.").

7. By reason of the default against the Defendants, the following allegations set forth in the First Amended Complaint are established as true.

<u>The License Agreement</u>

8. WWE and CTHC entered into an International Television Rights License Agreement dated as of November 1, 2013 ("License Agreement"), pursuant to which WWE granted CTHC the exclusive but limited right and license to broadcast certain television programs in Thailand via Pay Television on the broadcast channel owned by CTHC known as CTH Sports Channel and via any

other means of retransmission on authenticated platforms owned or controlled by CTHC, subject to the terms, restrictions and limitations set forth in the License Agreement.  The period of the License Agreement commenced on January 1, 2014 and was scheduled to terminate on December 31, 2018.  A true and accurate copy of the License Agreement is attached as Exhibit B to the Complaint.  (See First Am. Compl. ¶ 9.)

9. Section 4 of the License Agreement provides that CTHC was required to pay to WWE a particular license fee for each of the specified television programs to which CTHC was granted rights under the License Agreement.  Section 4 of the License Agreement sets forth the amount of the license fees that CTHC is required to pay each year during the term of the License Agreement and a schedule by which such payments are to be made.  Section 4 also required CTHC to provide a Bank Guarantee in a specified amount each year (generally half of the total amount of license fees due in that year) during the term of the License Agreement and to provide WWE with copies of all documents evidencing such Bank Guarantee.  (*Id.* at ¶ 10.)

10. Section 8 of the License Agreement provides in relevant part that "[t]his Agreement is subject to all of the provisions of the Standard Terms and Conditions that are attached to and made a part of this Agreement."  (*Id.* at ¶ 11.)

11. Section A(1) of Standard Terms and Conditions to the License Agreement provides in relevant part that "[u]nless otherwise agreed to in writing Licensee shall pay WWE the total license fee due, whether or not the Programs are telecast, without any deduction or offset of any kind except as specified in the

Agreement, and notwithstanding any claim Licensee may have or claim to have, and whether or not the Licensee becomes aware of such claim during or after the expiration of termination of the Agreement." (*Id.* at ¶ 12.)

12.     Section A(2) of the Standard Terms and Conditions to the License Agreement provides in relevant part that CTHC "shall pay WWE interest on any late payment at the lesser of (i) an annual rate of 2% over the prevailing prime interest rate in effect at JP Morgan Chase, New York, New York, on the date on which the outstanding amount of such late payment should have been received by WWE or (ii) the highest amount of interest allowed by applicable law." (*Id.* at ¶ 13.)

<u>Failure to Make Payments Due under the License Agreement</u>

13.     In accordance with the payment schedule in the License Agreement, WWE sent invoices to Defendants for payments due and owing under the License Agreement, including Invoice No. 95755 dated March 1, 2014 in the amount of $560,000.00, Invoice No. 97598 dated June 1, 2014 in the amount of $560,000.00, Invoice No. 99127 dated August 1, 2014 in the amount of $560,000.00, Invoice No. 100786 dated October 1, 2014 in the amount of $560,000.00, Invoice No. 102403 dated January 1, 2015 in the amount of $728,000.00, Invoice No. 102901 dated March 1, 2015 in the amount of $728,000.00, and Invoice No. 104680 dated June 1, 2015 in the amount of $728,000.00.  A true and accurate copy of these invoices is attached as Exhibit C to the Complaint.  (*Id.* at ¶ 14.)

14.     Defendants never made any payments on the invoices sent by WWE that are attached as Exhibit C to the Complaint.  (*Id.* at ¶ 15.)

15. Defendants also failed to pay $728,000.00 in license fees that were due to WWE on August 1, 2015 pursuant to the payment schedule set forth in the License Agreement.  (*Id.* at ¶ 16.)

16. CTHC also never provided WWE with the Bank Guarantee that was required by the License Agreement.  (*Id.* at ¶ 17.)

17. WWE made several attempts in good faith to contact CTHC regarding its repeated failures to make the payments required by the License Agreement.  (*Id.* at ¶ 18.)

18. By letter dated October 23, 2014, WWE provided CTHC with a formal notice that CTHC was in breach of the License Agreement for non-payment of outstanding license fees then totaling $2,240,000.00.  (*Id.* at ¶ 19.)

19. By letters dated May 22, 2015, WWE demanded payment from CTH and CTHC for the outstanding license fees due under the License Agreement then totaling $3,969,000.00, plus the interest accrued thereon at the rate prescribed in Section A(2) of the Standard Terms and Conditions calculated from the date that each license fee was due.  (*Id.* at ¶ 20.)

20. As of August 1, 2015, CTHC's outstanding balance for license fees owed under the License Agreement totaled $5,152,000.00, exclusive of interest.  (*Id.* at ¶ 21.)

**Termination of the License Agreement**

21. Section K(1) of the Standard Terms and Conditions of the License Agreement provides:  "If Licensee breaches any of the material terms or provisions of this Agreement including, without limitation, any non-payment

hereunder, and the Licensee fails to cure the breach within ten (10) days after receiving written notice from WWE specifying the particulars of the breach, WWE shall have the right to terminate this Agreement immediately by giving written notice to Licensee." (*Id.* at ¶ 22.)

22. On August 14, 2015, WWE sent a formal notice terminating the License Agreement based on CTHC's material breaches of the License Agreement and failure to cure those breaches, including without limitation CTHC's non-payment of license fees under the License Agreement (the "Notice of Termination"). A true and accurate copy of the Notice of Termination is attached as Exhibit D to the Complaint. (*Id.* at ¶ 23.)

23. The Notice of Termination constituted a valid and effective exercise of WWE's right to terminate the License Agreement. (*Id.* at ¶ 24.)

24. Section K(2) of the Standard Terms and Conditions of the License Agreement (the "Acceleration Clause") provides in relevant part that "upon the termination of this Agreement, all amounts due WWE by Licensee for Programs (i.e. the then remaining balance of the license fees due WWE as of the date of termination) shall become immediately due and payable to WWE." (*Id.* at ¶ 25.)

25. Pursuant to the Acceleration Clause, all license fees due to WWE under the License Agreement became immediately due and payable to WWE by CTHC upon termination of the License Agreement. The remaining balance of unpaid license fees under the License Agreement totals $22,942,500.00, which includes the $5,152,000.00 in license fees that were already past due and owed by

CTHC.  This sum does not include any fees or interest to which WWE is entitled pursuant to Section A(2) of the Standard Terms and Conditions.  (*Id.* at ¶ 26.)

26. To date, Defendants have not paid WWE any of the outstanding amounts due and owing under the License Agreement.  (*Id.* at ¶ 27.)

**Breach of Contract Against CTH Based on Piercing the Corporate Veil**

27. CTH is the parent company of CTHC and owns 99,997 out of the 100,000 shares of CTHC according to its shareholder list.  (*Id.* at ¶ 56.)

28. Defendants have overlapping management and personnel.  Defendants share the same office space, address, website, and telephone number.  Defendants share the same core business operations.  Defendants do not deal with each other as arms-length companies.  (*Id.* at ¶ 57.)

29. A representative of Defendants has even informed WWE that the companies are part of the same group and operate together.  (*Id.* at ¶ 58.)

30. On information and belief, there was such a unity of interest and ownership between CTH and CTHC that the independence of CTHC had in effect ceased or had never begun, and an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting CTHC to escape liability arising out of an operation conducted by CTHC for the benefit of CTH.  (*Id.* at ¶ 59.)

31. On information and belief, CTH completely dominated and controlled the finances, policy, and business practices of CTHC with respect to the License Agreement with WWE such that CTHC had no separate mind, will, or existence of its own.  (*Id.* at ¶ 60.)

32. CTH's control over CTHC was used to commit a fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of WWE's legal rights by failing to make payments of the amounts owed under the License Agreement, thereby proximately causing damages to WWE.  (*Id.* at ¶ 61.)

33. As a result, CTH is jointly and severally liable for the full amount owed to WWE by CTHC under the License Agreement.  (*Id.* at ¶ 62.)

III.   **CALCULATION OF AMOUNT OF DAMAGES**

34. Pursuant to Federal Rule of Civil Procedure 55(b), "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing."  Fed. R. Civ. P. 55(b)(1).

35. As set forth in the Affidavit of James W. Langham ("Affidavit"), the Defendants owe WWE the principal amount of $22,942,500.00, plus interest of $444,860.76, for a total amount of $23,387,360.76 owed under the License Agreement as of November 1, 2015.  The Affidavit, detailing the factual basis for this motion, is attached as Exhibit A and incorporated by reference herein.

36. The table below summarizes the calculation of the amount owed by Defendants to WWE under the License Agreement based on the payment terms of the License Agreement and the contractual rate of interest provided by the License Agreement.  (*See* Affidavit, Exhibit 1 at ¶ 4.)  The full interest calculation is attached as Exhibit B and incorporated by reference herein.

| AMOUNT OWED | DUE DATE | INTEREST RATE[1] | AMOUNT OWED PLUS INTEREST[2] |
|---|---|---|---|
| $560,000 | March 1, 2014 | 5.25% | $609,134.25 |
| $560,000 | June 1, 2014 | 5.25% | $601,723.84 |
| $560,000 | August 1, 2014 | 5.25% | $596,810.41 |
| $560,000 | October 1, 2014 | 5.25% | $591,896.99 |
| $728,000 | January 1, 2015 | 5.25% | $759,832.55 |
| $728,000 | March 1, 2015 | 5.25% | $753,654.52 |
| $728,000 | June 1, 2015 | 5.25% | $744,020.99 |
| $728,000 | August 1, 2015 | 5.25% | $737,633.53 |
| $728,000 | August 14, 2015[3] | 5.25% | $736,272.27 |
| $910,000 | August 14, 2015 | 5.25% | $920,340.34 |
| $910,000 | August 14, 2015 | 5.25% | $920,340.34 |
| $910,000 | August 14, 2015 | 5.25% | $920,340.34 |
| $910,000 | August 14, 2015 | 5.25% | $920,340.34 |
| $910,000 | August 14, 2015 | 5.25% | $920,340.34 |
| $1,137,500 | August 14, 2015 | 5.25% | $1,150,425.43 |
| $1,137,500 | August 14, 2015 | 5.25% | $1,150,425.43 |
| $1,137,500 | August 14, 2015 | 5.25% | $1,150,425.43 |
| $1,137,500 | August 14, 2015 | 5.25% | $1,150,425.43 |
| $1,137,500 | August 14, 2015 | 5.25% | $1,150,425.43 |
| $1,365,000 | August 14, 2015 | 5.25% | $1,380,510.51 |
| $1,365,000 | August 14, 2015 | 5.25% | $1,380,510.51 |
| $1,365,000 | August 14, 2015 | 5.25% | $1,380,510.51 |
| $1,365,000 | August 14, 2015 | 5.25% | $1,380,510.51 |
| $1,365,000 | August 14, 2015 | 5.25% | $1,380,510.51 |
| **$22,942,500** | | | **$23,387,360.76** |

WHEREFORE, WWE requests that this Court enter judgment against the Defendants, jointly and severally, in the liquidated amount of $23,387,360.76.

---

[1] **Section A(2) of Standard Terms and Conditions to the License Agreement provides that the interest rate is "an annual rate of 2% over the prevailing prime interest rate in effect at JP Morgan Chase, New York, New York, on the date on which the outstanding amount of such late payment should have been received by WWE." The prevailing prime interest rate during this time period was 3.25%. (http://www.jpmorganchase.com/corporate/About-JPMC/historical-prime-rate.htm). Therefore, the contractual interest rate during this period was 5.25%.**

[2] **This represents the amount owed plus interest as of November 1, 2015.**

[3] **Pursuant to the Acceleration Clause, all license fees due to WWE under the License Agreement became immediately due and payable to WWE upon termination of the License Agreement on August 14, 2015.**

**PLAINTIFF WORLD WRESTLING ENTERTAINMENT, INC.**

By: */s/ Jeffrey P. Mueller*
    **Jonathan B. Tropp (ct11295)**
    **Jeffrey P. Mueller (ct27870)**
    **Day Pitney LLP**
    **242 Trumbull Street**
    **Hartford, CT 06103**
    **Phone: (860) 275-0100**
    **Fax: (860) 275-0343**
    **Email: jbtropp@daypitney.com**
    **Email: jmueller@daypitney.com**
    **Its Attorneys**
